UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION

| | |
|---|---|
| FRED NEKOUEE, individually, | : |
| Plaintiff, | : |
| vs. | : Case No. 2:18-cv-02309 |
| MDC COASTAL 1, LLC, a Delaware limited liability company; | : |
| BED BATH & BEYOND INC., a New York corporation; and | : |
| BED BATH & BEYOND OF OVERLAND PARK INC., a Kansas corporation; | : |
| Defendants. | : |

**COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues the Defendants, MDC COASTAL 1, LLC, a Delaware limited liability company; BED BATH & BEYOND INC., a New York corporation; and BED BATH & BEYOND OF OVERLAND PARK INC., a Kansas corporation (sometimes referred to as "Defendants"), for declaratory and injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.  Plaintiff, Fred Nekouee, is an individual who resides in Tampa, Florida, in the County of Hillsborough.

2.  Defendants' property, a portion of the Southglen shopping center, is located at

12035 Metcalf Avenue, Overland Park, Kansas 66213, in Johnson County ("Bed Bath & Beyond" or "buy buy Baby" as applicable).

3.   The Defendants' property is located in and does business within this judicial district.

4.   Venue is proper in the District of Kansas, Kansas City Division because the situs of the Defendants' property lies in this judicial district.

5.   Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendants' violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.  *See also* 28 U.S.C. § 2201 and § 2202.

6.   Defendants own, lease, lease to, or operate places of public accommodation, a portion of the Southglen shopping center, the Bed Bath & Beyond and buy buy Baby, as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

7.   Defendants are responsible for complying with the obligations of the ADA.

8.   The places of public accommodation that the Defendants own, operate, lease or lease to are a portion of the Southglen shopping center, the Bed Bath & Beyond and buy buy Baby.

9.   Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.  Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

10.   Mr. Nekouee travels to the Kansas City metropolitan area every three to six months to accompany his brother at heavy equipment auctions, or to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to visit his uncle or cousin who live in such area.

11. The Plaintiff, Fred Nekouee, has visited, bought goods, and sought to avail himself of the services at the Bed Bath & Beyond which forms the basis of this lawsuit on March 29, 2018, and he plans to return to the property to avail himself of the goods and services offered to the public at the property since it is close to and convenient to the heavy equipment auction and dealerships, and his uncle and cousin he visits in the Kansas City metropolitan area.

12. The Plaintiff has definite plans and flight reservations to return to the Kansas City metropolitan area in July 2018.

13. The Plaintiff likes to buy gifts for his family while he is traveling, and Bed Bath & Beyond and buy buy Baby have suitable gifts for his family.

14. The Plaintiff plans to return to the Southglen shopping center on his upcoming visits to the Kansas City metropolitan area.

15. For the reasons set forth in paragraphs 10, 11, 12, 13, 14 and 26, Mr. Nekouee plans to return to the Southglen shopping center to shop for gifts at Bed Bath & Beyond and buy buy Baby.

16. The Plaintiff has encountered architectural barriers at the subject property. The barriers to access that the Plaintiff encountered at the property have endangered his safety in his wheelchair, impaired his ability or those accompanying him to park a vehicle due to a lack of signage, impaired his ability to access the property due to excessively steep slopes in parking spaces for the disabled, access aisles and walking surfaces, impaired his use of the men's restroom in Bed Bath & Beyond Inn, and have impaired his access to the goods and services at Bed Bath & Beyond and buy buy Baby.

17. The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

18.     The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards.

19.     Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair, and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

20.     On his visit to the Bed Bath & Beyond and buy buy Baby at the Southglen shopping center, the Plaintiff encountered changes in elevation, excessively steep running slopes and cross slopes in its parking lot, access aisles, ramps and walking surfaces (sidewalks).

21.     The Plaintiff encountered barriers to access in the men's restroom in the Bed Bath & Beyond.

22.     The Plaintiff is deterred from visiting the Southglen shopping center and the Bed Bath & Beyond and buy buy Baby even though he enjoys their goods and services, because of the difficulties he will experience there until the property is made accessible to him in a wheelchair.

23.     The Plaintiff is deterred from visiting the places of public accommodation in the Southglen shopping center, even though it is close to the heavy equipment auction, heavy equipment dealerships, and the home of his uncle and cousin in the Kansas City metropolitan area because of the difficulties he will experience there in the parking lot, access aisles, ramps, walking surfaces (sidewalks), and restroom until the property is made accessible to him in a wheelchair.

24.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 29 of this Complaint.

25.     Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

26. Fred Nekouee desires to visit the Bed Bath & Beyond and buy buy Baby at the Southglen shopping center not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

27. The Defendants have discriminated against the individual Plaintiff Fred Nekouee by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 et seq.

28. The Defendants have discriminated, and are continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

29. Preliminary inspections of the Southglen shopping center and the Bed Bath & Beyond and buy buy Baby show that violations exist. The violations that Fred Nekouee personally encountered or observed on his visit to the Southglen shopping center, the Bed Bath & Beyond and buy buy Baby include, but are not limited to:

**PARKING AREA**

a. In the parking lot, one of the two parking spaces for disabled patrons in front of Bed Bath & Beyond does not have the signage and international symbol of accessibility, in violation of Federal Law 2010 ADAAG 502.6 and 703.7.2.1. The lack of signage made it difficult for the Plaintiff to locate a parking space for a disabled individual like him.

b. In the parking lot, the parking space for disabled patrons in front of buy buy Baby has an excessively steep running slope, as steep as 1.32.3 (3.1%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4. This steep slope makes it very difficult for a disabled individual who requires a wheelchair for mobility to stay stable while loading and unloading from a vehicle. The Plaintiff observed this steep slope. This condition deters him and other disabled individuals like him who require the use of a wheelchair for mobility from visiting buy buy Baby.

c. In the parking lot, the parking space for disabled patrons in front of Bed Bath & Beyond has areas with excessive running slopes, as steep as 1:20 (5%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG 502.4. This steep slope makes it very difficult for a disabled individual who requires a wheelchair for mobility to stay stable while loading and unloading from a vehicle. The Plaintiff encountered this steep slope and was unstable in his wheelchair loading and unloading from his vehicle. This condition deters him and other disabled individuals like him who require the use of a wheelchair for mobility from visiting Bed Bath & Beyond.

d. In the parking lot, the parking space for disabled patrons in front of buy buy Baby has areas with excessive cross slope, as steep as 1:15.2 (6.6%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG 502.4. This steep slope makes it very difficult for a disabled individual who requires a wheelchair for mobility to stay stable while loading and unloading from a vehicle. The Plaintiff observed these steep slopes. This condition deters him and other disabled

individuals like him who require the use of a wheelchair for mobility from visiting buy buy Baby.

e. In the parking lot, the running slope of the access aisle serving the disabled parking spaces in front of buy buy Baby is as steep as 1:28.6 (3.5%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG 502.4. The Plaintiff observed this condition, and such steep slope deters him and other disabled individuals who require a wheelchair for mobility from visiting buy buy Baby.

f. In the parking lot, the running slope of the access aisle serving the disabled parking spaces in front of buy buy Baby is as steep as 1:32.3 (3.1%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG 502.4. The Plaintiff observed this condition, and such steep slope deters him and other disabled individuals who require a wheelchair for mobility from visiting buy buy Baby.

g. In the parking lot, the running slope of the access aisle serving the disabled parking spaces in front of Bed Bath & Beyond is as steep as 1:27.8 (3.6%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG 502.4. This steep slope made it very difficult for the Plaintiff, a disabled individual vehicle who requires a wheelchair for mobility, to stay stable while unloading and loading from and into a vehicle. This steep slope deters the Plaintiff from visiting the Bed Bath & Beyond.

h. In the parking lot, the cross slope of the access aisle serving the disabled parking spaces in front of Bed Bath & Beyond, shown in the photographs below taken during the Plaintiff's visit in March 2018, is as steep as 1:13.2 (7.6%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4.

This steep cross slope made it very difficult for the Plaintiff to avoid tipping over sideways in his wheelchair in this access aisle.





    i.    The running slope of the walking surface in front of Bed Bath & Beyond is as steep as 1:13.5 (7.4%), which slope is steeper than the maximum allowed slope of 1:20

(5%), in violation of Federal Law 2010 ADAAG § 403.3.  The Plaintiff was unstable in his wheelchair on this walking surface due to such steep running slope.

j.   The running slope of the walking surface between Bed Bath & Beyond and buy buy Baby is as steep as 1:14.5 (6.9%), which slope is steeper than the maximum allowed slope of 1:20 (5%), in violation of Federal Law 2010 ADAAG § 403.3.  The Plaintiff was unstable in his wheelchair on this walking surface due to such steep running slope.

k.   The cross slope of the walking surface in front of buy buy Baby is as steep as 1:25.6 (3.9%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 403.3.  The Plaintiff was unstable in his wheelchair on this walking surface due to such steep cross slope.

l.   The running slope of the accessibility ramp in front of Bed Bath & Beyond is as steep as 1:9.4 (10.6%), which slope is steeper than the maximum allowed slope of 1:12 (8%), in violation of Federal Law 2010 ADAAG § 405.2.  It was very difficult for the Plaintiff to remain stable in his wheelchair in this access ramp, and he required assistance to ascend the ramp to enter Bed Bath & Beyond.

**MEN'S RESTROOM IN BED BATH & BEYOND**

m.  In the men's restroom in Bed Bath & Beyond, the accessible toilet compartment door pull is not provided on both sides of the door near the latch, and the latch provided requires tight grasping and cannot be opened by a loose grip or closed fist, in violation of Federal Law 2010 ADAAG §§ 309.4, 404.2.7 and 604.8.1.2.  The Plaintiff could not pull this door closed.

n.   In the men's restroom in Bed Bath & Beyond, the rear wall grab bar only extends 15 inches and 21 inches from the centerline of the water closet and does not extend the

9

minimum of 12 inches (305 mm) on one side and 24 inches (610 mm) on the other side, in violation of Federal Law 2010 ADAAG § 604.5.2.  This rear wall grab bar made it very difficult for the Plaintiff to position himself to use the toilet.

o. In the men's restroom in the Bed Bath & Beyond, the distance from the toilet centerline to the side wall is 21 inches and not between a minimum of 16 inches (405 mm) and a maximum of 18 inches (455 mm) from the side wall, in violation of Federal Law 2010 ADAAG § 604.2.  This condition made it very difficult for the Plaintiff to reach the side grab bar and toilet paper dispenser.

p. In the men's restroom in the Bed Bath & Beyond, the opening of the toilet seat cover dispenser is 58 inches above the finish floor and not within the minimum of 15 inches and maximum of 48 inches above the finish floor, in violation of Federal Law 2010 ADAAG § 308.2.1.  The Plaintiff could not reach a toilet seat cover.

30. All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

31. The discriminatory violations described in paragraph 29 are not an exclusive list of the Defendants' ADA violations.  Plaintiff requires the inspection of the Defendants' place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.  The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendants' buildings and its facilities, and have otherwise been discriminated against and damaged by the Defendants because of the Defendants' ADA violations, as set forth above.  The individual Plaintiff, and all others similarly situated will continue to suffer

such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.  In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendants' places of public accommodation to determine all of the areas of non-compliance with the Americans with Disabilities Act.

32. Defendants have discriminated against the individual by denying individuals access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.  Furthermore, the Defendants continue to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

33. Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendants, a remedy in equity is warranted.

34. Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendants pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

35. Defendants are required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been

an alteration to Defendants' places of public accommodation since January 26, 1992, then the Defendants are required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendants' facilities were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendants' facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

36. Notice to Defendants is not required as a result of the Defendants' failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less). All other conditions precedent have been met by Plaintiff or waived by the Defendants.

37. Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendants to alter the Bed Bath & Beyond, buy buy Baby and adjacent parking lot spaces at the Southglen shopping center, to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendants cure their violations of the ADA.

38. Millions of Americans require the use of a wheelchair for mobility.

39. The number of wheelchair users increases in the United States every year due in part to the aging of the baby boomer generation.

40. Removing existing architectural barriers to access under Title III of the ADA will be good for business at the Bed Bath & Beyond and buy buy Baby.

**WHEREFORE,** Plaintiff respectfully requests:

a.	The Court issue a Declaratory Judgment that determines that at the commencement of the subject lawsuit the Defendants are in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.	Injunctive relief against the Defendants including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendants to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.	An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205.

d.	Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## **DESIGNATION OF PLACE OF TRIAL**

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby

designates Kansas City, Kansas as the place of trial for this action.

                                              Respectfully submitted,

                                              s/Robert J. Vincze
                                              Robert J. Vincze (KS #14101)
                                              Law Offices of Robert J. Vincze
                                              PO Box 792
                                              Andover, Kansas 67002
                                              Phone: 303-204-8207
                                              Email: vinczelaw@att.net

                                              *Attorney for Plaintiff Fred Nekouee*